and Fagon v. Keeley Are we losing the Hewitt Hawks? Alright, well thank you for being here, good luck to you and I hope you have an enjoyable day here at the Courthouse. So is it Mr. Girard? Is that how it's passed? Yes. Good morning. Mr. Girard, good morning. You've reserved two minutes for rebuttal, so that gives you eight minutes to begin. The floor is yours. Judges of the Court of Appeals, good morning. My name is Tom Girard. I'm arguing this morning on behalf of the defendant, Appel Lance. Your Honors, this case implicates two bedrock principles of 1983 litigation. The first is, this is individual liability. Personal liability versus respondeat superior. And each of my five clients who are on appeal now have a right to have an individual determination as to whether or not they violated civil rights. But that's an argument you made for the first time in your reply brief, right? Sorry? That's an argument you made for the first time in your reply brief, isn't it? Well, I didn't consider it an argument. My point of emphasis is that it's just individual liability that we're talking about here. And my clients deserve to have an individual assessment of their liability. What do you mean point of emphasis? That's an argument. You have to make that argument in the open brief so that they have a chance to respond. The district court did address several of the officers with regard to their alleged mistakes with respect to whether or not a shot had been fired, whether or not an officer was dragged or not. So the district court did address some of the individual officers. Address some of them. Yeah, but you didn't raise it in the opening brief. So they didn't get a chance to respond. Well, then I will emphasize the second point, which is qualified immunity is an immunity from suit, not from liability. And so everyone who has protection of qualified immunity does have the right to have it assessed pre-suit. I saw a shift in your opening brief to your reply brief about what the clearly established law is. I want to see if we can agree on that, okay? So isn't the clearly established law based upon Tennessee v. Gardner and a slew of Second Circuit cases is that if there's no immediate threat of death or serious injury to officers or members of the public, then lethal force is not permitted. Isn't that the law? Your Honor, that is not clearly established for qualified immunity purposes because- In your opening brief on page 13, you said the district court erred in denying qualified immunity because officers of reasonable competence could disagree on the amount of force required to stop a motorist who posed an imminent risk. I emphasize imminent risk of death or serious physical injury. Throughout your opening brief, and as a matter of fact, New Britain's own policy requires that it be imminent. We have many cases that talk about the immediacy requirement, and in your reply brief, you suggest that if officers see someone who they think committed a robbery several days earlier, and that person attempts to flee, that they could shoot him, which is not the law. So can you explain that? Yes. First of all, when we consider what is clearly established, we have to go by what the Supreme Court told us constitutes clearly established law in Wilson v. Lane. I know this panel has had this issue a number of times in Martinez v. Hasper and in the Vega-Colón v. Ulyssier case. Wilson v. Lane tells us clearly established is an amalgam. It's Supreme Court decisions first and foremost, then it's Second Circuit decisions, and then it's the consensus. In Tennessee v. Gardner, the Supreme Court said, where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force. In Cowan, we quoted that exact language. That's clearly established law. You cannot shoot someone because they committed a robbery, allegedly, several days earlier, and they're running away. You know that, right? All right. Yes or no? Can you shoot someone who's committed a robbery several days earlier because they're running away, if they're not posing an imminent threat to an officer or to the public? Yes or no? Everything is fact-specific, Judge. You can't say yes or no to that, because in our circumstances, and this is the lesson, it's a correct principle to use, accurately stated, Tennessee v. But in the Saucier v. Katz case, the Supreme Court told us, look at these cases individually. They each have their own circumstances, and as this body of case law develops, we will know. Any case in the history of the Second Circuit where we have found qualified immunity, where someone was just a fleeing felon that was not posing an immediate threat to an officer or to a member of the public, any case in the history of the circuit where we've found qualified immunity for that? In light of Tennessee v. Gardner. Well, I know the Supreme Court has found that. I mean, this is why I'm telling you. Plumoff v. Rickard is the most important case to deciding this particular appeal, and that's because it's a 2014 Supreme Court decision based on facts very similar to ours. There's a reckless operation by someone. He's stopped in a parking lot. Plumoff, the case exceeded 100 miles per hour and lasted over five minutes, and the Supreme Court said it is beyond serious dispute that the plaintiff's flight posed a grave public safety risk. Exactly, but at the time deadly force was used, that car was stopped. It was penned in by police officers. It made a decision he wanted to leave, and three shots were fired into that car. I know, but it had already been a 100-mile-an-hour, five-minute chase. He had already demonstrated that he posed a grave immediate risk. It's a fair inference that if that man got away, he would harm anyone in his path, but we have the same inference in our case. That's why I'm saying Plumoff is the one to look at. What I'm saying to you is the clearly established law, that you have to have an immediate threat of harm to an officer or to the public, okay? Can you assume that for me? That's the law. I'm having trouble hearing you. I said, can you assume that that's the law? What I'm suggesting to you to the law is will you just assume that for my question? What is the law? That Tennessee v. Garner is the law? That you have to have an immediate threat to an officer or to a member of the public to use lethal force. You're shaking your head no. That's not Tennessee v. Garner. It's a reasonable perception is what it goes by. Right, but the district court found that there are disputed issues of fact of whether or not it would be reasonable for the officers in this scenario to believe that there was an immediate threat. So, as you know, we have said we can't overlook a district court finding facts. We can't ignore that. The district court here found disputed facts over whether or not it was a reasonable mistake even to believe that there was a threat. If, well, we have a video that resolves everything the court needs to know in order to assign, assess qualified alluding. I looked at the video, and you can tell me if I'm wrong. Where in the video is Officer Jones ever in front of the car when he's firing the shot? Well, he crossed over in front of it. He's the first. Officer Jones crosses over in front of the vehicle and then shoots. Yeah. When he shoots, he's on the side of the car, right? Well, I mean, we can draw. What I'm happy to do is have your honor draw any inference you want favorable to the non-moving. But what we have to do is look at it this way. I think the court is not giving proper regard to the saucier instruction of take these cases individually. Cowan v. Breen does not establish forever what the law is in this field. Plummer v. Rickard is a data point. It's a 2014 data point. But the district court identifies what questions remain open. Those include whether the victim's car hit the police vehicles or the police hit him, what the speed was when it was in reverse, what the speed was when it went forward, whether the officers could have gotten out of the way or could not have gotten out of the way. Why aren't those questions enough to make this not appropriate for a qualifying? I had that in my hand. I was just about to raise it. That's page 21 of the special appendix. Every one of those issues is resolved in a very clear, high-definition video. All right, but it seems to me you've disclaimed a Scott v. Harris argument. I mean, Scott v. Harris basically says where there's a video that contradicts one side's version of events, the court is not bound by the version of the non-moving party. But I thought in your brief you basically were saying you're not invoking Scott v. Harris to say that the video answers all questions. Am I wrong about that? Well, what we'll do is we'll take undisputed facts, and there are many, many undisputed, the plaintiff's version of any disputed fact and anything that's clearly shown in the video. I mean, look what our court said was disputed. Look, we're not a second bite at the apple on the facts here. I mean, what we're here to decide is whether or not there are disputed issues of fact. You seem to be saying that you are adopting what the plaintiff is asserting are the facts, but you're really disputing what the plaintiff is saying, right? No, I'm not disputing the plaintiff's version of the facts. We'll accept any version the plaintiff has offered, and we do that. But what I'm saying is the district court did that too, and you'll see it. Everything you need to decide this case has been identified by the district court when the court describes what can be seen in the important 15 seconds of the video. And then the court says, well, but it's still not clear. Did the police hit the vehicle, or did the vehicle hit the police? What was the speed when it reversed? There's a video you can look at, and you can say, was it 2 miles an hour, 4 miles an hour? Was it 2 feet away, 4 feet away? Those are not material to the qualified immunity issue. That's my point for this appeal. So whether it was going 2 miles an hour or whether it was going 30 miles an hour is not relevant? Excuse me. This is where the video comes in, Judge. You have to look at the video, and you'll see there's no way this is 30 miles an hour. It's 2, 3, or 4. It's a car backs up, goes on a sidewalk, comes forward, goes down. It's a few miles an hour. We'll accept any reasonable estimate based on any view of that video. And the important point is if you're a police officer and you're on the street and you're paying attention to all the precedents, you'll read, okay, I read Collin v. Breen, police officers 44 feet away, et cetera, et cetera. That's violation of the Fourth Amendment. I also read Plumoff v. Rickard where the police have someone cornered. He bursts his way through. They fire three shots into the vehicle and then 12 shots into the back of the vehicle as he's speeding away because he was a reckless person who could be perceived to be reckless. Their person could also perceive to be someone who would hurt someone if he got away. Because look what he did in the two previous events. There's three different theories that I feel are weaved together in your argument, and I want to understand which one. I think the Plumoff one is the one that you're standing on the most forcefully, but the officers are either trying to prevent somebody who's done something really bad from escaping and perhaps committing armed robberies in the future. Is that a theory as to would there be qualified immunity if that was the basis for the firing of the shots? No, we wouldn't be able to claim that based on preventing armed robberies in the future. Okay, because in your reply brief you say had the defendants delayed in apprehending the occupants of the vehicle, it is reasonable to believe that harm may have followed in the form of subsequent armed robberies. You're not trying to hold to that theory? That's too far out into the future. Okay, so then at the other end there's the threat to the officers themselves that I needed to shoot to protect myself. And are you arguing that there's not a dispute of fact as to whether Officer Jones or any other officer was faced the kind of danger from the oncoming car that warranted deadly force? Right. There's actually a third scenario, to protect the car from hurting others in the area. That's what I was going to get to. So that's your theory is that because of this driver's behavior in this moment, officers could reasonably infer that this driver, if allowed to drive away, would cause harm to someone out on the road because of the dangerousness of their driving. The reasonable perception of the threat of serious injury or death, that's the Tennessee versus Garner standard. But it's both of us. For Kylie and for Jones, they were about to get hit by the car and they almost got hit by the car. Are you arguing that point? Yes, absolutely. So you think that there is not a dispute of fact as to whether they faced the kind of imminent threat that would warrant deadly force? No. No dispute of fact? No dispute of fact because the video shows both men and the car. You can watch the video, you can watch both men. So let's assume we reject your argument on that and you're left with the Plumhoff argument. Can you tell me how we compare somebody who's done a high-speed chase going 100 miles an hour, posing a danger long before they were apprehended with somebody who's driving slowly, as far as we can tell, obeying all traffic laws until they were cornered by these folks and then drove to get away. At what point do we see the danger to downstream drivers? So what we get from the high-speed chase is that this is a person who was reckless and if allowed to leave, he'll probably be as reckless and dangerous to anyone who he encounters. The fact of the matter is he stopped right now. What we have in our case that's very similar and certainly not beyond debate is this car has been identified. There was a photo identification by the second robbery victim. This is the car in just the previous two days had pistol whipped, had robbed, had tried to carjack, had shots fired, etc. It's the same exact, so it's reasonable for the police to, they know they have the same car. It's reasonable for them to think they have the same people and the way these people acted once they got cornered, it's reasonable to think they are not going to stop. They will do whatever it takes to get away. That's as reckless as the 100-mile-an-hour pursuit person. And so they can't let him get away for the same exact reason. But again, if you're a police officer trying to keep up on what the constitutional decisions are from the Supreme Court, you will have read that in Plumhoff, they fired three shots at that person. Didn't stop him. He took off and then put 12 in the rear. So that's the reason as to why even after the car passed the officers and all the officers were behind the car, it was protected by qualified immunity to 20 plus points to the back of the car. Because in Plumhoff v. Rickard, now remember, Plumhoff v. Rickard is a merits decision. It wasn't qualified immunity. This is not a violation of the Fourth Amendment. So this is 2014. You hear that Plumhoff is not a violation of the Fourth Amendment. And then you're now in 2017. What's changed? Not Mullenix v. Luna. That was when you had a police officer up on a bridge. He shot four times into the chest of a motorist, even though there were stop sticks below the bridge that would have stopped the motorist. And that was qualified immunity. So if you're a New Britain police officer seeing I've read Plumhoff and I've read Mullenix, nothing has changed. The law is not clearly established that if they did similar to what they did, that they would be violating constitutional rights. It's not beyond debate. And that's the point. All right. Well, you've reserved two minutes for rebuttal. Thank you very much. We'll now hear from Mr. Acharya. Did I say that right? Exactly right. Well, you'll correct me if I got it wrong. You may proceed. Good morning, Your Honours, and may it please the Court. Atul Acharya for the Plaintiff Appellee, Shireen Fagan, Administrator of the Estate of Zoe Dowdell. Whether the officers here should get qualified immunity depends on the facts. If Dowdell slammed his car into the police vehicles around him, if he floored it at the officers in his path, if he made them reasonably fear for their safety or the safety of others, then perhaps the officers would be entitled to qualified immunity. But those predicate facts are the fundamental question in the case. The district court found that for purposes of summary judgment, they were false. That is, that a jury could reasonably find from the evidence that Dowdell did not hit the police vehicles, that in fact they hit him, that Dowdell never drove his vehicle at an officer, that he was merely trying to flee and that the officers were never in danger, and that a reasonable officer would not have believed that Dowdell could have killed or seriously injured him or others. In this interlocutory posture, those facts are binding on the officers. A trial, a jury could conclude otherwise. But on interlocutory review, this court's jurisdiction extends only to deciding whether under those facts, the officers' decision to use deadly force and kill Dowdell. I guess my question is, does the video resolve some of the questions that the district court posed as still unresolved? Whether the Paseo hit the police vehicles or the police vehicles hit the Paseo. Is that resolved by the video? The district court held that it wasn't resolved, and so that means this court lacks jurisdiction to re-examine that factual conclusion. Well, the Scott case does suggest that there's indisputable video evidence that we can reach that, even if the district court said there's factual disputes that preclude qualified immunity. If the video evidence was contradicted by that, we have jurisdiction to do that, don't we? So two things on Scott. One, Scott doesn't, even taking Scott, interpreting Scott the way Your Honor mentioned, it doesn't apply here because it talks about when the video makes the district court's findings a fact of visible fiction. Right. Blatantly contradicted. That's what I think he's arguing. He's arguing that the video, it's uncontroverted by the video that this car was driving at the officer at some point. Maybe when the officer fired, he was off to the side of Jones, but the car drove at him, and that can't be disputed by the video. What's your response to that? I think, so my first response, of course, is that the district court made that finding, and this court lacks jurisdiction. I don't think the video in any sense blatantly contradicts the district court's finding, especially as to Jones, because as my friend said, Jones crosses over in front of the vehicle, and it's not clear at all from the video because it's not in the video whether the vehicle was moving at the time. If Jones jumped in front of a moving vehicle, the district court correctly found that it was clearly established that if he had unreasonably put himself in harm's way, he can bootstrap that into a justification to use deadly force. There's a case called Salam in 1996 where that type of argument was made that the officer's negligence led to a situation where he had to use lethal force, and we said we rejected that argument and said the officer's actions leading up to the shooting are irrelevant to the objective reasonableness of his conduct at the moment he decided to employ deadly force, that negligence by the officer doesn't then deprive them of the ability to use lethal force if the situation they confronted would allow for that. So if an officer negligently goes in front of a car but the car is driving at him or her, at least that case would suggest. I know you cited some other cases that suggested the contrary from other circuits, but at least that case suggests that even if an officer does something negligent to place their life at risk, if their life is at risk because of what your client is doing, they can use lethal force. I'm not familiar with the 1996 case that Your Honor mentioned, but Cowan actually is on point on this because Cowan says one of the questions that the juror would have to resolve that qualified immunity hinges on is whether the officer safely could have gotten out of the way. In other words, if the officer safely could have gotten out of the way, then the officer is not entitled to qualified immunity for using deadly force. By greater force, if the officer puts himself into harm's way, then he's not entitled to qualified immunity for using deadly force. Starks, of course, is also on point on that point, and there are cases from the other circuits, but I think Cowan does all of the work necessary for Jones. As far as Kiley, I think the video, there are two videos. In one video, from one video, a juror could conclude that Kiley was perhaps on the path of the Paseo, but there's another video, the Coleman 1996 video, which shows that the Paseo was always going alongside Kiley, and particularly when he shot, and it was never pointed at him. So a jury has to look at both of these videos and decide which video is closer to the truth and which video shows Kiley's perspective. There is no body camera footage in this case. If there were, if there were a camera on Kiley's lapel that showed what he actually saw, then perhaps we could say the video is enough to resolve the case completely. I know, but isn't there an argument that if in fact Jones, he drove at Jones and put Jones's life in jeopardy, that all the officers' subsequent actions, I know you say, well, then the car, and Judge Robinson asked this question of Mr. Girard, but the other officers could have qualified immunity for believing that he tried to run over an officer, so even though they're shooting now at a car that's driving away, that they can use lethal force because he tried to kill an officer. That officer shot at him, and they can continue to shoot at him because they can infer that this person is going to continue to pose imminent threat as they drive away. I think if a jury concludes from the video that Dowdell drove at Jones, then perhaps the rest of the shots are reasonable. All right, so it really does boil down to that particular disputed fact, right, of whether or not he drove at Jones or not? Yes, I think that fact, if he drove at an officer, then I think the threat that he posed, the immediacy of the threat that he posed, turns out to be very different than if he didn't drive at an officer, and the district court found that a reasonable jury could find that he didn't drive at an officer, and if he didn't do that, then the threat that he posed and the immediacy of the threat that he posed is not enough to justify using deadly force. Now, that's not to say that the officers simply have to let him go. They have all sorts of lower degrees of force that they can use. They can give pursuit. They can bump his car off the road, as they did in Starks. They can use spike strips. But what they can't do is kill him for trying to flee if he's not posing an immediate threat to an officer or to someone else. My friend talked a lot about the Plumhoff case. He said it was very similar to this one. As Your Honor pointed out, there was a high-speed car chase in that case, and the Supreme Court explicitly said that deadly force was justified to terminate the dangerous car chase. So it was the dangerous car chase that really the case hinged on. By contrast, here, there was no pursuit. The officers all say that in their deposition testimony. Well, I didn't get to that point, but if the car reverses and hits a police car and then goes forward and hits another police car and is clearly trying to get out of the situation while banging into the cars with some officers on the street, out of their vehicles, you're not saying you have to go 100 miles an hour before there's justification for using lethal force, are you? I'm not saying you have to go 100 miles an hour, Your Honor. But whether he did bang into the police cars is one of the disputed facts and one of the facts that's outside this court's jurisdiction to revisit. Is the inferences that can reasonably be drawn from the facts within the scope of what's considered a disputed fact for the jury? I'm thinking in particular of this question of what an officer can reasonably infer about the risks someone poses. Yes, Your Honor. Is that an objective question, because we're talking about reasonableness, that if we can look at the video and if we all assume the video is a perfect representation of reality, we can decide that, or do we have to decide whether there's a range of reasonable inferences, inferences a jury can make or conclusions a jury can reach as to the reasonableness of that inference, and therefore it's a jury question. So the reasonableness of an officer's perception or subjective perception is a question of fact. That's something that this court explained at some length in Jones v. Trubit, where there was a question of the officer's mistaken perception that the individual posed a threat. This court said over and over again it's the jury's role to consider the reasonableness of Lieutenant Trubick's stated belief. So whether the officer reasonably believed that the person posed a threat is a fact question. Here it's a jury question because the district court said it's a jury question. It doesn't always have to be. If there were video, again, if there were video from the officer's lapels, you might be able to see something that's so clear that you can say no reasonable jury would find one way or the other. But here you don't have that. But is it your position that the video doesn't show whether the Paseo hit the cops or the cops hit the Paseo? That is my position and it's the district court's position, Your Honor. I'm saying that you've watched the videos and you're saying that there's some question from the videos as to who hit whom? I'll start with the Acura. So when the Acura and the Paseo come into contact, the Acura is moving. It's moving forward. It's moving forward at at least a couple of miles an hour. The Paseo has barely shifted into reverse. I think as far as the Acura is concerned, the Acura hit the Paseo and not the other way around. If I were on the jury, that's how I would resolve that. As far as the second contact with the Taurus that came up afterwards, the Taurus is also moving forward at the time that the contact is made. It's not clear that it's visible to Dowdell when he's reversing. And I think a jury could find from that. Oh, and also the driver of the Taurus, Officer Nelson, said, well, I didn't mean to hit him. I was just trying to box him in. And so a jury could infer from that testimony and from the video that the officer did come and hit Dowdell. We have to look at the reasonableness of a potential mistake. And those things are all happening at split second. Officers there just see cars hit. It's very hard for them to determine, even as you described it, who hit whom, right? So I know, again, the district court made a finding. Believe me, I understand that. But you could have an argument that no reasonable jury could conclude under these situations that it would have been unreasonable for an officer to at least believe, even if it was wrong, that he may have hit one or two police cars in trying to escape, right? I think if that were the rule, Your Honor, then an officer could bootstrap essentially hitting someone's car into being able to shoot and kill them because it's unclear who hit whom. No, but you have other officers who are watching this. Jones is not one of the cars being hit, right? Jones is out of his car at that point right now. I think – no, no one gets out of the car until after – So one of these two cars is Jones' car? I think Jones was in the Acura. But anyway, you could have a situation where the officer is watching cars hitting each other and has to make a split second assessment. And could be wrong about who's hitting who, but is trying to assess the dangerousness of someone who's trying to flee, right? Absolutely. And the district court found that a jury could find that it was unreasonable for him to think so. A jury could also find otherwise, but it is a jury question. Just as the officers – you know, the situation in Jones against Trubig was also – it was hot. There was tasing going on. The officer was trying to bring this person under control. He had to make a split second decision about whether Jones was still – yeah, whether Jones was still resisting. And still, it was a jury question, and the jury had to make that finding about whether his mistaken perception that Jones was still resisting was reasonable. And since the jury didn't make that factual finding, the officer was not entitled to qualified immunity. So, to here. The ultimate question in this case is whether a jury could conclude that defendants reasonably believe that Paseo could have killed or seriously injured them or others. The district court held that that was a factual question, a genuinely disputed one, and one that a jury would have to resolve. And this court should not disturb that finding on interlocutory appeal. So this court should affirm. Thank you. All right. Thank you very much. We'll now hear from Mr. Gerard for two minutes of rebuttal. Your Honors, both the Fourth Amendment force issue and the qualified immunity issue are doctrines of objective reasonableness. It's would an officer in the shoes of the officer who's at issue reasonably believe X. So what's going on in the mind of our officers is not relevant to your inquiry. We'll give them the accuracy. I mean, this video answers all of those questions. They're objective. I'm curious, though, whether that means that they're questions for the court, or is it a question for the jury to say, look at the video and conclude whether the officer could reasonably conclude that the cop who's in danger is allowed to depart? It's the latter, Your Honor. It's the court. Look at the video, along with the undisputed facts and the plaintiff's version of any disputed fact. Just take a look at what that video shows. Would an officer in that position be justified in perceiving a threat of death or serious physical injury? We don't need to get tape measures out and have a jury tell us it was two feet, not four feet. Right. So the question of whether you can conclude, let's assume the facts are not the two feet, four feet speed. All of that is established. Whether or not the officer could reasonably conclude, given whatever the set of facts is that we adopt, that there's a danger to downstream drivers on the road, for example. You're saying that's not a jury question. That's a question for the court? That's this court's question on qualified immunity. And then on remand, I guess it would also be, even if you lose and it goes forward, you're saying that would be a question as to which the district court would perhaps instruct the jury. If you find that this car hit them and the speed was that, then you must conclude it was reasonable for us to do so? No, it would be, the district court would reserve qualified immunity for itself, and the issue would, would an officer in this officer's shoes reasonably perceive, not what was in the mind of that officer. No, but I understand that, but how, so if the court reserves the question of qualified immunity, so the jury doesn't get instructed on qualified immunity, that comes back to the court? Correct. It'll be reserved, yes. And so how does the court know what findings the jury made? Do you have to give a special verdict form? The court just needs to have in mind what happened, and the video shows what happened. Then the court decides, based on what I'm looking, I'm watching Jones fire, I'm watching Kiley fire, I'm watching Slavin fire. I believe or I don't believe an officer could reasonably perceive death or fear of serious physical injury to himself or others based on that record. That's, that's, that becomes, that's why this court can do this right now. And the only thing I know I'm over, I'd like to just leave you, Your Honors, with an emphasis. Clearly established, has to mean what Lane versus Wilson, Wilson versus Lane says it means. It's an amalgam. It's evolving. It doesn't just become decided in 2000, and therefore it's decided forever. Yes, Cowan exists. That's a 2003 decision. But we have Brousseau versus Hagen in 2004. Scott versus Harris. Plumhoff is 2014. Mullenix is 2015. That's what the police officers in 2017 have in their brain when they decide what they want to do. And this is a classic Graham versus Connor caution. Graham said, these are tense, uncertain, rapidly evolving situations. You can't judge by 20-20 hindsight. There's four pages of text dissecting the 15 seconds when this all happened to these men. And so I think the best way to do this, I submit to Your Honors, watch the video many times, run it. It's all real time. And then say to yourself, based on what Supreme Court has told these officers in recent decisions, Mullenix and Plumhoff, is it beyond debate that if they fire their weapons, you can't even debate it? The constitutional issue is so clear. And it isn't beyond debate. And I would ask Your Honors to enter judgment for the defendant, five appellant defendants. Thank you very much. All right. Thank you both. We will reserve decision.